IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

AUTUMN LAMPKINS,

          Plaintiff,

    v.                          Civil Action No. 16-647-CFC

MITRA QSR, LLC, and
MITRA QSR KNE, LLC,

          Defendants.

---

Patrick C. Gallagher, Raeann Warner, JACOBS & CRUMPLAR, P.A., Wilmington, Delaware

*Counsel for Plaintiff*

Richard A. Barkasy, Daniel M. Pereira, SCHNADER, HARRISON, SEGAL & LEWIS LLP, Wilmington, Delaware; Jo Bennett, Samantha Banks, SCHNADER, HARRISON, SEGAL & LEWIS LLP, Philadelphia, Pennsylvania

*Counsel for Defendants*

**MEMORANDUM OPINION**

November 28, 2018
Wilmington, Delaware

_____
CONNOLLY, UNITED STATES DISTRICT JUDGE

Before me in this employment discrimination case is a motion for partial summary judgment (D.I. 81) filed by Defendants Mitra QSR KNE, LLC and Mitra QSR, LLC (collectively, "Mitra"). For the reasons discussed below, I will grant in part and deny in part the motion.

## I. BACKGROUND

Plaintiff Autumn Lampkins alleges three counts in her Amended Complaint against Mitra: gender discrimination (Count I) and creating and/or allowing a hostile work environment (Count II)[1] in violation of Title VII, 42 U.S.C. § 2000e *et seq.* and parallel state law, and failure to provide accommodations and opportunities to express breast milk (Count III) in violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 207(r). All three counts arise out of the undisputed allegation that Lampkins needed to use a pump to express breast milk at work following the birth of her son.

---

[1] Count II is titled "harassment" and does not use the term "hostile work environment." D.I. 15 at 23. Nonetheless, the substance of Count II makes clear that it is a based on a hostile-work-environment theory of employment discrimination, Mitra characterized Count II as such in its summary judgment motion briefing, and Lampkins did not take issue with Mitra's characterization of Count II.

In Count I, Lampkins alleges that she suffered adverse employment actions and was ultimately constructively discharged because of her need to express milk during her work hours. D.I. 15 at 21–22. In Count II, Lampkins alleges that she "endure[d] pervasive and regular harassment from her managers and co-workers" because of her need to express milk. D.I. 15 at 23–24. In Count III, Lampkins alleges that Mitra failed to provide her with sufficient opportunities to express milk, initially forced her to express milk in a bathroom, and then required her to express milk in an office which had operating video cameras and windows that allowed other employees to observe her express her milk.

Viewing the record evidence in the light most favorable to Lampkins, as I must for summary judgment purposes, the relevant facts are as follows. Lampkins began working for Mitra as an assistant-restaurant-manager trainee at a KFC franchise in Camden, Delaware, where she was initially required to pump her milk in a bathroom, and then was required to pump in an office which had a camera that could not be turned off and a window through which her coworkers could and did observe her pumping. D.I. 85, Ex. C at 94:21–95:08. One male employee was caught observing Lampkins on two occasions when she pumped. *Id.* at 96:23–97:9, 102:25–103:16. On multiple occasions, another male employee used his keys to enter the office while Lampkins was pumping. *Id.* at 96:10–11, 103:19–22,

269:20–22; D.I. 85, Ex. E at 43:23–53:14. Lampkins' supervisor did paperwork in the office while Lampkins pumped. D.I. 85, Ex. F at ¶ 6.

Lampkins wanted to pump every two hours but was permitted by her supervisor to pump only once during her ten-hour shift at Camden. D.I. 85, Ex. G at 86:12–16. After Lampkins' coworkers complained when she took breaks from work to pump, D.I. 85, Ex. D at 24:10–12; D.I. 85, Ex. F at ¶ 9, Lampkins was demoted and transferred to a store in Dover "so [that] it would be easier for [her] to get the time to express [her] breast milk," D.I. 85, Ex. C at 65:12–66:13. Her pay was also cut. *Id.*

In Dover, Lampkins was again forced to pump in an office with a camera and a window. *Id.* at 139:10–18. Other employees saw her pumping through the window and occasionally entered the office while she was pumping. *E.g., id.* at 146:4–25; D.I. 85, Ex. J at 47:14–19. Lampkins' supervisor cut Lampkins' hours for the stated reason that Lampkins would have more time to pump. *See id.* at 70:14–23; D.I. 85, Ex. I at 157:14–158:6, 217:5–218:1. Because Lampkins could not pump a sufficient number of times during her shift, her breast milk would leak through her shirt, causing her embarrassment. *See* D.I. 85, Ex. L. Eventually, Lampkins' milk supply dried up, preventing her from breastfeeding her son. D.I. 85, Ex. C at 270:6–15, 305:6–14; D.I. 85, Ex. L.

Lampkins' coworkers at Dover complained about her pumping, and employees under her supervision were insubordinate to her because they were upset that she would pump rather than "be[] on the floor." *See, e.g.*, D.I. 85, Ex. I at 207:2–22. This insubordination frustrated Lampkins' ability to do her job. *See, e.g., id.* at 207:2–7. Lampkins' supervisor discouraged Lampkins from pumping, *see, e.g., id.* at 230:16–22, and characterized Lampkins' pumping as "obviously ... a huge issue," *see id.* at 156:21–22. Lampkins' supervisor testified that her own supervisor "didn't even want to hear about [Lampkins' pumping] anymore, really, because she didn't know what to do [about it] either[.]" *See id.* at 156:24–157:2.

Lampkins' employment with Mitra culminated in a factually-disputed incident involving a customer's jacket. Mitra claims that Lampkins stole the jacket, but Lampkins claims to have brought the jacket home accidentally. *See* D.I. 85, Ex. C at 156:9–157:9. Shortly after the jacket incident, Lampkins heard from a coworker that Lampkins' supervisor planned on firing Lampkins. *See id.* at 157:16–158:5. Lampkins quit instead. *See* D.I. 85, Ex. L. Lampkins' supervisor testified that she was "probably" about to fire Lampkins because of the jacket incident. *See* D.I. 85, Ex. I at 192:9–20.

## II. LEGAL STANDARDS FOR SUMMARY JUDGMENT

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as

4

a matter of law." Fed. R. Civ. P. 56(a). "[T]he party moving for summary judgment . . . bears the burden of demonstrating the absence of any genuine issues of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the burden of persuasion at trial would be on the non-moving party, then the moving party may satisfy its burden of production by pointing to an absence of evidence supporting the non-moving party's case, after which the burden of production then shifts to the non-movant to demonstrate the existence of a genuine issue for trial. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986); *Williams v. Borough of West Chester, Pa.*, 891 F.2d 458, 460–61 (3d Cir. 1989). "In an employment discrimination case, the burden of persuasion on summary judgment remains unalterably with the employer as movant." *Doe v. C.A.R.S. Protection Plus, Inc.*, 527 F.3d 358, 362 (3d Cir. 2008).

Material facts are those "that could affect the outcome" of the proceeding. *Lamont v. New Jersey*, 637 F.3d 177, 181 (3d Cir. 2011). "[A] dispute about a material fact is 'genuine' if the evidence is sufficient to permit a reasonable jury to return a verdict for the nonmoving party." *Id.* A non-moving party asserting that a fact is genuinely disputed must support such an assertion by: "(A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or other materials; or (B) showing that the

materials cited [by the opposing party] do not establish the absence . . . of a genuine dispute . . . ." Fed. R. Civ. P. 56(c)(1). The non-moving party's evidence "must amount to more than a scintilla, but may amount to less (in the evaluation of the court) than a preponderance." *Williams*, 891 F.2d at 461.

The court must view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Wishkin v. Potter*, 476 F.3d 180, 184 (3d Cir. 2007). "[T]he facts asserted by the nonmoving party, if supported by affidavits or other evidentiary material, must be regarded as true . . . ." *Aman v. Cort Furniture Rental Corp.*, 85 F.3d 1074, 1080 (3d Cir. 1996). If "there is any evidence in the record from any source from which a reasonable inference in the [nonmoving party's] favor may be drawn, the moving party simply cannot obtain a summary judgment . . . ." *Id.*

### III. DISCUSSION

Mitra seeks summary judgment with respect to: Count I insofar as it is "based upon Plaintiff's constructive discharge as an adverse employment action"; Count II insofar it "alleg[es] a hostile work environment"; and Count III insofar as it "alleg[es] that [] Mitra violated the Fair Labor Standards Act." D.I. 82 at 1–2. Because Mitra's constructive discharge arguments rely in part on its hostile work environment arguments, I will first examine Mitra's arguments with respect to

6

Count II, then consider its arguments with respect to Count I, and then turn to its arguments regarding Count III.

## A. LAMPKINS' HOSTILE WORK ENVIRONMENT CLAIM (COUNT II)

To prevail on her hostile work environment claim, Lampkins must show that: (1) she suffered intentional discrimination because of her sex; (2) the discrimination was severe or pervasive; (3) the discrimination detrimentally affected her; (4) the discrimination would detrimentally affect a reasonable person in like circumstances; and (5) there is a basis for holding her employer liable. *Mandel v. M & Q Packaging Corp.*, 706 F.3d 157, 167 (3d Cir. 2013).

Mitra challenges the second and fourth elements of Lampkins' hostile work environment claim, arguing that "the conduct was not so frequent, severe or pervasive or threatening enough for an objectively reasonable person to conclude they [sic] were harassment." D.I. 82 at 17. Mitra does not argue that the alleged harassment was not "intentional discrimination"; nor does Mitra contest that Lampkins, subjectively, was detrimentally affected.[2]

---

[2] In its reply brief, Mitra challenges for the first time the fifth element of Lampkins' hostile work environment claim, arguing that there is no basis for holding Mitra liable for any harassment committed by its employees. *See generally* D.I. 88. Because the argument was raised for the first time in Mitra's reply brief, it is waived. *See In re Fosamax (Alendronate Sodium) Prods. Liab. Litig. (No. II)*, 751 F.3d 150, 157 (3d Cir. 2014) ("We have consistently held that [a]n issue is waived unless a party raises it in its opening brief . . . .") (first alteration in original) (internal quotation marks and citation omitted).

7

In this case, genuine issues of material fact exist with respect to the severity and pervasiveness of what Mitra concedes are intentionally discriminatory acts. Lampkins was forced to pump in an office with a window and operating camera. The feed from the camera was visible to some of Mitra's employees in Texas. In Camden, one male employee was caught observing Lampkins twice while she pumped; another male employee entered the office on multiple occasions as Lampkins pumped; and Lampkins' supervisor would use the office to do paperwork while Lampkins pumped. At the Dover restaurant, coworkers entered the office on numerous occasions when Lampkins was pumping. On one such occasion, after a male cook interrupted Lampkins' pumping to ask a question, Lampkins' supervisor reprimanded Lampkins because Lampkins told the cook to ask his question to another employee.

It is undisputed that Lampkins' supervisor discouraged her from pumping at work. Workers under Lampkins' supervision complained about Lampkins needing to take breaks to pump and were insubordinate to her because they resented Lampkins for pumping on the job, thus making it harder for Lampkins to do her job and further discouraging her from taking the time to pump. Because Lampkins was not permitted to pump as frequently as she needed to, breast milk would leak through her shirt and cause her embarrassment. Ultimately, her milk supply dried up, and she became unable to breastfeed her son. In light of the totality of these

circumstances, which Mitra concedes were discriminatory, a reasonable jury could conclude that Lampkins faced severe or pervasive harassment that would detrimentally affect an objectively reasonable person.

### B. LAMPKINS' CONSTRUCTIVE DISCHARGE CLAIM (COUNT I)

To prove constructive discharge a plaintiff "must show working conditions so intolerable that a reasonable person would have felt compelled to resign." *Pennsylvania State Police v. Suders*, 542 U.S. 129, 147 (2004). "[T]he plaintiff must demonstrate a greater severity or pervasiveness of harassment than the minimum required to prove a hostile working environment." *Spencer v. Wal-Mart Stores, Inc.*, 469 F.3d 311, 316 n.4 (3d Cir. 2006) (internal quotation marks and citation omitted). Mitra argues that Lampkins did not suffer from sufficiently severe or pervasive harassment.

As discussed above, a reasonable jury could find that Lampkins suffered severe or pervasive harassment that would detrimentally affect an objectively reasonable person. I find that a reasonable jury could also conclude that this harassment was intolerable to such a degree that Lampkins felt compelled to resign.

The Third Circuit has articulated several factors to consider in determining "whether an employee can recover on a claim of constructive discharge":

> Factors we have found relevant to this issue are whether the employer (1) "threatened [the employee] with

9

> discharge" or "urge[d] or suggest[ed] that she resign or retire," (2) "demote[d] her," (3) "reduce[d] her pay or benefits," (4) "involuntarily transferred [her] to a less desirable position," (5) altered her "job responsibilities," or (6) gave "unsatisfactory job evaluations."

*Colwell v. Rite Aid Corp.*, 602 F.3d 495, 502–03 (3d Cir. 2010) (alterations in original) (citations omitted). Here, Lampkins was demoted with a corresponding pay cut, given reduced hours, received unsatisfactory job evaluations, and was under the impression that her supervisor was going to fire her — an impression that was essentially confirmed by the supervisor's admission at her deposition that she was "probably" about to terminate Lampkins.

In addition, the same employees under Lampkins' supervision who complained about Lampkins' pumping were insubordinate to her; and Lampkins' supervisor's testimony suggests that Lampkins' positive working attitude was eroded by the problems associated with her attempts to pump. Both of these circumstances support an inference that a hostile work environment frustrated Lampkins' ability to do her job. *Cf. Aman*, 85 F.3d at 1084 (considering fact that "the employee had lost confidence in herself and her employer" to be "particularly persuasive" in the constructive discharge context). Thus, a reasonable jury could find that Lampkins was constructively discharged.

Mitra also argues that even if Lampkins could prove that she was constructively discharged, Mitra is "entitled to summary judgment because

[Lampkins] cannot show that the legitimate non-discriminatory reason [for her constructive discharge] was pretext[ual.]" D.I. 82 at 13. But Lampkins does not need to establish that Mitra's proffered reason for her discharge was pretextual. As the Supreme Court explained in Green v. Brennan, 136 S. Ct. 1769, 1779 (2016), a plaintiff who alleges a constructive discharge claim does not have to show that the employer harbored "the specific discriminatory intent of forcing the employee to resign," but need only prove that the "circumstances of discrimination" in her work environment were "so intolerable that a reasonable person would resign." In this case, Mitra does not dispute that the underlying circumstances that created the hostile work environment were discriminatory acts.

### C. LAMPKINS' FLSA CLAIM (COUNT III)

Section 207(r) of the FLSA requires certain employers[3] to provide a nursing mother under their employ with a reasonable break time and a private place other than a bathroom to express breast milk for one year after the birth of her child. 29 U.S.C. § 207(r)(1). Mitra does not dispute that it was required to comply with § 207(r); nor does it dispute that it violated § 207(r). It argues instead that "[b]ecause the FLSA's statutory scheme does not provide a private cause of action

---

[3] The statute exempts "[a]n employer that employs less than 50 employees . . . if such requirements would impose an undue hardship by causing the employer significant difficulty or expense when considered in relation to the size, financial resources, nature, or structure of the employer's business." 29 U.S.C. § 207(r)(3).

11

for the injuries alleged" by Lampkins, Mitra is entitled to summary judgment on Count III of Lampkins' complaint. D.I. 82 at 17. Lampkins argues that § 207(r) affords her a private right of action that entitles her to lost wages, attorney's fees, and costs. D.I. 85 at 18–20. I agree with Mitra.

By its terms, § 216(b) of the FLSA creates a private right of action to enforce § 207(r):

> Any employer who violates ... section 207 of [the FLSA] shall be liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and in an additional equal amount as liquidated damages. ... An action to recover the liability prescribed in ... the preceding sentence[] may be maintained against any employer ... in any Federal or State court of competent jurisdiction by any one or more employees[.] ... The court in such action shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action.

29 U.S.C. § 216(b); *see also Tolene v. T-Mobile, USA, Inc.*, 176 F. Supp. 3d 674, 680 (N.D. Ill. 2016) (holding "there is a limited private right of action for the enumerated damages in § 216(b) to enforce violations of § 207(r)"); *Hicks v. City of Tuscaloosa*, 2015 WL 6123209, at *29 (N.D. Ala. Oct. 19, 2015) (same); *Lico v. TD Bank*, 2015 WL 3467159, at *3 (E.D.N.Y. Jun. 1, 2015) (same). *But see Eddins v. SSP Am., Inc.*, 2013 WL 12128683, at *29 (S.D. Iowa Jan. 31, 2013) ("[T]he [FLSA] regulations do not currently provide for a private cause of action

under § 207(r)."); *Ames v. Nationwide Mutual Ins. Co.*, 2012 WL 12861597, at *6 n.26 (S.D. Iowa Oct. 16, 2012) ("hold[ing] that the FLSA does not provide a private cause of action to remedy alleged violations of § 207(r)"); *Salz v. Casey's Mktg. Co.*, 2012 WL 2952998, at *3 (N.D. Iowa Jul, 19, 2012) ("Since Section 207(r)(2) provides that employers are not required to compensate employees for time spent express milking, and Section 216(b) provides that enforcement of Section 207 is limited to unpaid wages, there does not appear to be a manner of enforcing the express breast milk provisions.").

Nevertheless, § 216(b) does not offer Lampkins the remedy she seeks in this case (i.e., lost wages). By its express terms, § 216(b) limits the remedies available for violations of § 207(r) to "unpaid minimum wages" and "unpaid overtime compensation." *See Hicks*, 2015 WL 6123209, at *29 ("The statute does not provide for a remedy for 'lost wages,' but only for 'unpaid minimum wages, or [] unpaid overtime compensation.'"); *Mayer v. Prof'l Ambulance, LLC*, 211 F. Supp. 3d 408, 414 (D.R.I. 2016) (explaining "that the only remedy for a violation of Section 207(r) is for unpaid minimum or overtime wages"). Lampkins, however, has not alleged that she is entitled to any unpaid minimum or overtime wages.

Accordingly, Mitra is entitled to summary judgment on Count III of Lampkins' amended complaint.[4]

## IV. CONCLUSION

Mitra has not shown that Lampkins cannot prevail as a matter of law on her hostile work environment or constructive discharge claims under Title VII or parallel state law. Mitra, however, has shown that Lampkins cannot recover on her FLSA claim as a matter of law. Accordingly, I will deny Mitra's motion with respect to Counts I and II but grant the motion with respect to Count III.

The Court will issue an order consistent with this Memorandum Opinion.

---

[4] Because Lampkins cannot prevail as a matter of law on her FLSA claim, she is not entitled to attorney fees or costs for Count III. *See Dionne v. Floormasters Enters., Inc.*, 667 F.3d 1199, 1205 (11th Cir. 2012) ("[Section 216(b) of] [t]he FLSA plainly requires that the plaintiff receive a judgment in his favor to be entitled to attorney's fees and costs.").